J. G. MYERLY, Appellee, v. O. W. LOWERY, Appellant.

**ATTORNEY AND CLIENT:** Malpractice—Loss of Suit. Failure to win the client's action does not *ipso facto* render the attorney liable for malpractice.

**ATTORNEY AND CLIENT:** Malpractice—Refusal to Ask Question.
2   An attorney must be commended for his refusal to ask a manifestly ill advised question proposed by the client.

**ATTORNEY AND CLIENT:** Employment—Evidence of Employment.
3   A litigant may not consult with and freely accept the services of an attorney and then assert a lack of employment.

**COMPROMISE AND SETTLEMENT:** Unaccepted Offer. An attorney
4   is not bound by his unaccepted offer to compromise the amount of his fees.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

### MARCH 14, 1922.

### REHEARING DENIED SEPTEMBER 23, 1922.

ACTION at law on an account for attorney fees. There was a general denial in answer, and a counterclaim for damages for malpractice by plaintiff in the conduct of the defendant's suit in which the alleged attorney fees were earned. At the close of the evidence, the trial court withdrew the counterclaim, and submitted plaintiff's cause of action to the jury. There was a verdict for the plaintiff and judgment thereon. The defendant appeals.—*Affirmed.*

*O. W. Lowery, pro se,* for appellant.

*Mulvaney & Mulvaney* and *J. G. Myerly, pro se,* for appellee.

EVANS, J.—I.  In the trial of this case both in the court below and in this court, the defendant has acted as his own lawyer. This fact is a regrettable one, unless it may be justified

1. ATTORNEY AND CLIENT: malpractice: loss of suit.

by a lack of means to procure a better lawyer. The defendant is a physician. We infer from the record that he is in high standing as such; but he is not versed in the law. He does not understand why he was beaten below, and will not understand why he is beaten here.  It appears that he had a previous suit, wherein he was plaintiff, suing to recover rent upon a lease. This plaintiff was his attorney therein. That case was tried to a jury and, without

any apparent fault on the part of the attorney, resulted in a verdict for the adversary. In the case at bar, this defendant files a counterclaim against this plaintiff for damages for malpractice, and claims as his cause of action here the amount that he lost in the previous suit by the adverse verdict of the jury. Such was the counterclaim herein, which the trial court dismissed. Upon such ruling, this defendant assigns many errors.

If an adverse verdict by a jury renders a defeated attorney liable for malpractice to his defeated client, then this defendant's counterclaim should not have been stricken. If otherwise, then otherwise. We shall not attempt herein to lay before the defendant a course of elementary law, further than to suggest an analogy. If a lawyer who loses his case, as all lawyers sometimes do, thereby becomes liable to his client for malpractice, by suggestive analogy a physician also would become liable for malpractice when his patient dies, as patients sometimes do. The lawyers might recoup their malpractice losses by drawing from the cemetery malpractice cases against physicians, like· drawing dominoes from a bone yard. How many other malpractice liabilities might accrue against the respective lawyers in the trial of malpractice cases, one of whom must lose in every case, we leave open for speculation. The illustration here suggested is absurd, but is not more so than was the defendant's counterclaim. There was little excuse for his prosecuting an appeal to this court in order to find it out.

Particular complaint is made by the defendant because, in such previous suit, he himself instructed his attorney to propound specific questions to a witness, and the attorney either neglected or refused so to do. This is a familiar tale. The questions thus formulated by this defendant were manifestly ill advised, and emanated from legal conceptions that were as wide of the mark as is his present defense. He ought to know that a jury trial to the lawyer is not wholly unlike a surgical operation to the surgeon. It is a time of tense nerve to the operator and of danger to the patient and client. A slight slip may be fatal. The experienced lawyer knows that the ill advised question is often the slip that severs an artery or cuts an intestine. The questions proposed by the defendant to his attorney were well cal-

2. ATTORNEY AND CLIENT: malpractice: refusal to ask question.

culated to such an end. The neglect of the attorney to put them should be credited to him as a sincere loyalty to his client. We hold, therefore, that the counterclaim of the defendant was without semblance of merit, and that prejudicial error pertaining thereto was quite impossible.

II. The plaintiff's petition asked to recover the reasonable value of the plaintiff's services as attorney in such previous suit. Such value was alleged to be $150, reduced by a credit for $25 paid thereon by the defendant. The defendant's answer, as distinguished from his counterclaim, was, in legal effect, a general denial. He specifically denied, both in his answer and by his evidence, that he had ever employed the plaintiff as his attorney, his claim being that he had employed another attorney, to whom alone he was liable for fees. It does appear that he had originally employed Laws as his attorney. Laws became sick, and recommended the plaintiff to the defendant. Pursuant to such recommendation and the defendant's assent thereto, Laws brought the plaintiff and defendant together in consultation. The plaintiff took charge of the case and conducted the trial, all of which was done with defendant's knowledge and consent. Needless to say that it was a sufficient employment to establish the direct relation of attorney and client, and to create a liability against the defendant for the reasonable value of plaintiff's services. As to the extent and value of such services, the evidence was abundant to go to the jury.

*3. ATTORNEY AND CLIENT: employment: evidence of employment.*

It appears in the evidence, however, that, after the close of such previous trial, the plaintiff and defendant had negotiations concerning plaintiff's fees. The plaintiff stated the value of his services to be from $150 to $200, but offered, in view of the adverse verdict, to accept $75 cash. It appears from the plaintiff's testimony that he understood the defendant to have assented to such a charge. This the defendant, however, denies. He did send to the plaintiff his check for $25, and he now insists that this check was in full for such fees. Not only so, but this item is included in his counterclaim, as a part of his damages for malpractice. The defendant now urges that in no event could the

*4. COMPROMISE AND SETTLEMENT: unaccepted offer.*

plaintiff recover more than $50, because of his previous offer to accept $75.

If the defendant had been gracious enough to have pleaded a settlement on the basis of $75, and to have admitted his liability therefor, and to have tendered payment thereof, he might have presented a plausible defense to such extent. He did not choose to do so. He denied all liability, and denied that he had ever assented to any settlement for $75. If the defendant was not bound by the $75 settlement, then the plaintiff was not. The plaintiff's original measure of recovery was the reasonable value of his services. He did not lose such right by a proposed compromise which had not been accepted as a settlement by the defendant. It appeared also from the evidence, largely from the plaintiff's side, that, at the time of the original employment of the plaintiff, the question of plaintiff's charges was discussed, and that plaintiff said at that time that he would be willing at any time to allow the amount of his charges to be fixed by Attorney Laws. It is now argued by the defendant, basing his argument upon such testimony, that a reference of the question of fees to be arbitrated by Laws was a condition precedent to the bringing of this suit; that, inasmuch as such question had never been submitted to Laws, the plaintiff's suit must fail. The defendant has no pleading upon which to base such an argument. His answer set up no such condition. He testified to none. On the contrary, he has taken the position of nonliability, and that he had never employed the plaintiff. Furthermore, Laws was a witness in the case, and testified that the services of plaintiff were worth from $150 to $200. The record clearly discloses that, if Myerly had gone through the form of submitting the question to Laws, Lowery would not have admitted that such action was binding upon him, nor that any finding by Laws would be obligatory upon him. This is his unequivocal attitude, both by his pleading and by his evidence. The present contention, therefore, is not available to him in mere argument.

We have gone through the record carefully, and are very clear that it contains no prejudicial error. The judgment below is, therefore,—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.